UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHLEEN E. TOMES,

     Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.
_____/

Civil Action No. 11-15042

HON. MARK A. GOLDSMITH
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Kathleen E. Tomes brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment [Doc. #13] be GRANTED and that Plaintiff's motion [Doc. #12] be DENIED.

## PROCEDURAL HISTORY

On January 9, 2010, Plaintiff Kathleen E. Tomes ("Plaintiff") filed an application for DIB, alleging disability as of January 1, 1999 (Tr. 97-101). After the initial denial of the claim, she requested an administrative hearing, held on May 19, 2011 in Detroit, Michigan before Administrative Law Judge ("ALJ") Gregory Holiday[1] (Tr. 29). Plaintiff, represented

---

[1]The date stated on the hearing transcript is June 19, 2011 (Tr. 29). However, the ALJ issued his post-transcript hearing on June 7, 2011, stating that the hearing was held

-1-

by attorney Randall Phillips, testified (Tr. 33-51), as did Vocational Expert ("VE") Jennifer Turecki (Tr. 52-56). On June 7, 2011, ALJ Holiday found that Plaintiff was not disabled on or before her date last insured of March 31, 2004 (Tr. 24). On October 3, 2011, the Appeals Council denied review (Tr. 1-6). Plaintiff filed for judicial review of the Commissioner's decision on November 15, 2011.

## BACKGROUND FACTS

Plaintiff, born February 17, 1959, was 52 when the ALJ issued his decision (Tr. 24, 97). She completed four or more years of college and worked previously as a case manager, social worker, medical coordinator, respite care worker, and supports coordinator (Tr. 117, 123). Her application for benefits alleges disability as a result of a schizoaffective disorder, depression, anxiety, paranoia, and medication side effects of fatigue (Tr. 116).

.   **Plaintiff's Testimony**[2]

Plaintiff, left-handed, testified that she experienced "a psychotic break" in February, 2004 (Tr. 33). She stated that since then, her work activity had been limited to a one-month stint as a respite care worker (Tr. 34). She indicated that she quit the job because of anxiety, adding that she had attendance problems during the course of the job (Tr. 47).

Plaintiff reported that she received a Master's degree in 1988 (Tr. 35). She stated that since 2004, she had "fired" her psychologist, Joan Moriarty (Tr. 35). She reported that in 2004 she had been prescribed Lexapro and Ativan by a physician (Tr. 35, 43). Plaintiff indicated that in 2004, she smoked frequently, experienced concentrational problems, and

---

on May 19, 2011 (Tr. 16, 24).

[2] The ALJ repeatedly directed Plaintiff to describe her condition before the date last insured. However, it is apparent from a reading of the medical transcript that Plaintiff's testimony drifts from events, conditions, and limitations occurring on or before March 31, 2004 to those occurring after. I have noted where the Plaintiff appears to allege that a condition or limitation which occurred during the relevant period.

slept for only short periods (Tr. 36). She stated that her now former husband helped her with the cooking (Tr. 36). She reported limited improvement from her treatment by Dr. Moriarty, adding that she was not able to participate in her youngest child's school activities (Tr. 37). She stated that while attending a concert, she would deliberately choose a seat in the last row from which she could make a quick exit in case she experienced anxiety during the performance (Tr. 38-39). She stated that her husband did most of the grocery shopping (Tr. 39). She stated that her socializing was limited to making 12-mile trips to her sister's house and lunch dates with her sister-in-law (Tr. 40). She stated that she did not drive on freeways due to anxiety (Tr. 48).

Plaintiff, now divorced, stated that she cooked for her two youngest children, adding that her adult son and former husband took care of her yard work (Tr. 41-42). She stated that she had not undergone therapy since November, 2010 (Tr. 42). She reported that anxiety interfered with her ability to sit for long periods (Tr. 43). She denied problems lifting, but stated that her ability to walk for long periods would be limited by shortness of breath (Tr. 44). She alleged daily anxiety and the need for reminders to finish tasks (Tr. 46). She stated that she was able to handle her own finances, but that her former husband gave her financial help (Tr. 47).

In response to questioning by her attorney, Plaintiff stated that anxiety had caused her to quit a former job as a social worker (Tr. 49). She alleged that in February, 2004, she experienced hallucinations and paranoia and did not shower or change clothes every day (Tr. 49-50). She opined that anxiety prevented her from returning to her former job as a social worker (Tr. 50-51).

**B. Medical Evidence**[3]

### 1. Treating Sources

**a. Records Pertaining to Plaintiff's Condition Prior to March 31, 2004**

In December, 2010 Nick Boneff, Ph.D. stated that he treated Plaintiff in psychotherapy in 1999 and 2000 (Tr. 360). He stated that Plaintiff's anxiety "made it difficult to function in pressured situations such as work environments" (Tr. 360). Dr. Boneff noted that Plaintiff's condition was exacerbated by the physical and emotional problems of her disabled school age son (Tr. 360, 455). Plaintiff began treatment with Joan Moriarty, Ph.D. on February 17, 2004 (Tr. 409). Plaintiff reported nervousness, anger, depression, stress, feeling of inferiority, and difficulty making decisions (Tr. 410). March, 2004 treatment notes state that Plaintiff had been diagnosed with depression and was currently taking Xanax (Tr. 413). Plaintiff stated that her psychological problems were exacerbated by her son's disabilities (Tr. 414). Dr. Moriarty's treating records state that Plaintiff received treatment on 10 occasions between February 14 and March 25, 2004 (Tr. 446, 496). On April 8, 2004, Plaintiff reported continued feelings of anxiety and depression (Tr. 420).

**b. Records Pertaining to Plaintiff's Condition Subsequent to March 31, 2004**

In June, 2005, Plaintiff reported to Dr. Moriarty that she experienced unreasonable fears in social situations (Tr. 427-428). Plaintiff sought emergency treatment for symptoms of psychosis (Tr. 207-215). She reported paranoid and obsessional thoughts (Tr. 212). Plaintiff's husband opined that outpatient treatment for depression and anxiety was

---

[3]The great majority of the treating records pertain to Plaintiff's condition after her date last insured ("DLI") of March 31, 2004. The later records have nonetheless been reviewed for possible relevance to Plaintiff's claim that she was disabled prior to her DLI.

-4-

inadequate (Tr. 210). Plaintiff appeared "calm and cooperative" (Tr. 211). She was diagnosed with major depression and an obsessive-compulsive disorder ("OCD") (Tr. 212). She was assigned a GAF of "10 and below"[4] (Tr. 214). Plaintiff reported that she had begun "tapering . . . off" Lexapro one month earlier (Tr. 213). A physical examination was unremarkable (Tr. 215). The following month, Plaintiff was again admitted for psychiatric hospitalization for depression and psychotic symptoms (Tr. 253).

In June, 2008, Plaintiff was admitted for four days of inpatient psychiatric hospitalization after becoming "increasingly agitated and delusional" (Tr. 216). Dr. Patel noted that despite medication adjustments, Plaintiff was "extremely anxious, fearful, and very paranoid" (Tr. 216). Upon admission, Dr. Patel assigned Plaintiff a GAF of 20[5] (Tr. 222). She was placed on suicide watch (Tr. 222). Treatment notes state that Plaintiff currently worked part-time as a respite care worker (Tr. 230). The following month, Dr. Patel noted that Plaintiff was still depressed and somewhat delusional, but denied hallucinations or suicidal ideation (Tr. 239).

In January, 2010, an intake evaluation by social worker Vivien Hsu stated that Plaintiff had experienced "relatively chronic" anxiety and depression with "occasional paranoid thoughts" (Tr. 316-317). Hsu noted that Plaintiff sought "talk therapy, first in 1999, and then again in 2004" (Tr. 315). In June, 2010, Plaintiff reported that she was seeking "third shift" work at a group home (Tr. 340). The following month, she stated that she

---

[4] A GAF score of 1-10 indicates "persistent danger of severely hurting self or others OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *American Psychiatric Association, Diagnostic and Statistical Manual Mental of Mental Disorders* ("DSM-IV") at 34 (4th ed.2000)

[5] a GAF score of 11-20 indicates "some danger of hurting self or others OR occasionally fails to maintain minimal personal hygiene OR gross impairment in communication." *DSM-IV-TR* at 34.

would like to receive training to become a nurse (Tr. 342). In August, 2010, Plaintiff reported that she had experienced a panic attack in the past while driving on the freeway (Tr. 346).

In October, 2010, Dr. Moriarty composed a retrospective summary of her February 17, 2004 to September 13, 2005 treatment on behalf of Plaintiff's claim for DIB (Tr. 358-359, 407-408, 454). She stated that Plaintiff experienced anxiety in social situations and felt "overwhelmed" by tasks of everyday living (Tr. 358-359, 362). Dr. Moriarty stated that "[d]uring the time that led up to the hospitalization [Plaintiff] experienced severe distress due to her obsessive - compulsive ways she was dealing with her unrealistic feelings of guilt and severe depression and anxiety" (Tr. 359, 362). In April, 2011, Dr. Moriarty stated that over the course of her treatment between February, 2004 and September, 2005, Plaintiff was unable to meet "competitive standards" in all areas of social and work-related activity except for the category of activities of daily living in which Plaintiff was deemed "[s]eriously limited but not precluded" (Tr. 457). Dr. Moriarty stated that during the course of treatment, Plaintiff's limitations were "reasonably . . . expected to last for 12 months or longer (Tr. 461). Dr. Moriarty found marked deficiencies in daily living, social functioning, and concentration, persistence, and pace (Tr. 464-465).

### 2. Non-Treating Sources

In June, 2010, James Tripp performed a non-examining Psychiatric Review Technique of Plaintiff's treating records (Tr. 287-299). He found that insufficient evidence existed to show the presence of a mental impairment prior to the DLI of March 31, 2004 (Tr. 299).

### C.  Vocational Expert Testimony

VE Jennifer Turecki classified Plaintiff's former work as a social worker as skilled

and exertionally sedentary and work as a direct care aide as semiskilled/medium [6] (Tr. 54, 200). The ALJ then posed the following question to the VE, taking into account Plaintiff's age, education and work experience:

> [A]ssume a person . . . who is able to perform at all exertional levels but with the following limitations: The person can have not more than occasional interaction with the public and with co-workers. No tandem tasks with co-workers. With those restrictions, could such a person perform any of Ms. Tomes past work? (Tr. 54).

The VE replied that given the above limitations, the individual would be unable to perform Plaintiff's past relevant work but could perform the job of laundry worker, unskilled/medium, Dictionary of Occupational Titles ("DOT") code 361.684-014 (3,000 jobs in the regional economy); sorter, unskilled/light, DOT code 569.687-022 (4,000); inspector, unskilled/light, DOT code 559.687-074 (3,000) (Tr. 54).

In response to a second question by the ALJ, the VE testified that if Plaintiff were required to avoid concentrated exposure to "hazards like dangerous machinery and unprotected heights" and limited to interacting with the public and co-workers not more than five percent of the workday, all work would be precluded (Tr. 55). In response to a third question by the ALJ, the VE stated that limiting interaction with co-workers and the public to 10 percent of the workday and a preclusion on production pace jobs would also eliminate all work (Tr. 55).

---

[6] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

In response to Plaintiff's counsel, the VE testified that if Dr. Moriarty's opinion that Plaintiff experienced severe social and concentrational limitations were included among the hypothetical limitations, all work would be precluded (Tr. 56). The VE also stated that the need to nap for up to two hours each day would also preclude all work (Tr. 56).

### D. The ALJ's Decision

ALJ Holiday found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of January 1, 1999 through her date last insured of March 31, 2004 (Tr. 18). Citing Plaintiff's medical records, the ALJ found that Plaintiff experienced the "severe" impairments of "major depressive disorder with a history of psychosis, bipolar disorder, and anxiety" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18-19). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for a full range of work at all exertional levels with the following limitations:

> [N]ot more than occasional interaction with the public and co-workers and no tandem tasks with co-workers (Tr. 20).

Citing the VE's job numbers, the ALJ determined that while Plaintiff was unable to perform any of her past relevant work, she could work as a laundry worker, sorter, and inspector (Tr. 23).

The ALJ discounted Dr. Moriarty's April, 2011 evaluation, noting that she had not treated Plaintiff since September, 2005 (Tr. 21). The ALJ found that Dr. Moriarty's findings were accompanied by few treating records predating the March 31, 2004 expiration of benefits (Tr. 21). He also noted that Dr. Moriarty's October, 2010 opinion did not provide significant insight into Plaintiff's alleged deficiencies in concentration, persistence, or pace (Tr. 21-22). The ALJ pointed out that Dr. Moriarty's opinion was undermined by the fact that Plaintiff's

psychiatric hospitalizations in 2005 and 2008 did not occur until well after the expiration of benefits (Tr. 22). He also discounted Dr. Boneff's conclusions regarding Plaintiff's condition in 1999-2000, noting that the psychologist "wrote only one paragraph regarding the claimant and provided only conclusions without any detailed medical records to support those conclusions" (Tr. 22).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff argues that the ALJ's discussion of Dr. Moriarty's October, 2010 and April, 2011 opinions was substantively and procedurally inadequate. *Plaintiff's Brief* at 10-16. In particular, she contends that the ALJ erred by failing to articulate all of the "regulatory factors" required for a treating physician analysis.

"[I]f the opinion of the claimant's treating physician is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record,' it must be given controlling weight." *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009)(citing *Wilson v. CSS,* 378 F.3d 541, 544 (6th Cir.2004). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391–392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson,* at 547; 20 C.F.R. § 404.1527(d)(2).

Plaintiff is correct that the ALJ must consider "the length of the ... relationship and the frequency of examination, the nature and extent of the treatment [,] ... [the] supportability of the opinion, consistency ... with the record as a whole, and the specialization of the treating source" in explaining reasons for rejecting the treating physician's opinion *Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(c)(2)). However, Plaintiff is mistaken in her belief that Sixth Circuit case law requires the *articulation* of all of these factors. *See Tilley v. Commissioner of Social Security,* 394 Fed.Appx. 216, 222, 2010 WL 3521928, *6 (6th Cir. August 31, 2010)(rejecting contention that articulation of all six factors was required to avoid remand). The argument that the ALJ erred by omitting discussion of each "regulatory factor" does not present grounds for remand. In the present case, the fact that the disability claim is supported by only six weeks of scant treating records before the expiration of benefits, with nothing more, is sufficient reason to discount Dr. Moriarty's opinion.

Plaintiff relies on *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399 (6th Cir. 2009) in support of her additional contention that the treating analysis of Dr. Moriarty's opinions was substantively inadequate. *Blakely* holds in relevant part that "an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given *'denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Id,* 581 F.3d at 407 (emphasis in original)(citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir.2007)).

Plaintiff's reliance on *Blakely* is misplaced. First, the ALJ devoted over a page of discussion to Dr. Moriarty's assessments (Tr. 20-22). He noted that despite the limitations found in Dr. Moriarty's 2010 and 2011 summations, the psychologist's "scant" treating records "clearly show that prior to March 31, 2004 . . . [Plaintiff] was not disabled" (Tr. 21).

At the risk of redundancy, the ALJ later noted accurately that "Dr. Moriarty did not provide many records regarding the claimant's mental condition prior to March 31, 2004" (Tr. 21). The ALJ acknowledged that during the course of Dr. Moriarty's treatment, Plaintiff required inpatient psychiatric treatment, but once again, correctly pointed out that "[t]he problem for the claimant is that the first above cited hospitalization took place more than a year after her insured status expired on March 31, 2004" (Tr. 21). The ALJ's discussion of Dr. Boneff's one-page summary was likewise adequate. He permissibly noted that the psychologist's summary "provided only conclusions without supporting detailed medical records" (Tr. 22).

Further, although Plaintiff's characterizes the ALJ's treatment of Dr. Moriarty's opinions as a "rejection," the ALJ did not so much reject the opinion that Plaintiff experienced disability at some later point, but instead, explained his reasons for finding that Plaintiff could not show that she was disabled before March 31, 2004. Notably, although Dr. Moriarty was asked to provide assessments for the express purpose of bolstering the disability claim, at no point did she state that Plaintiff was disabled before March 31, 2004.

### B. Credibility

Plaintiff also argues that the ALJ's credibility analysis was procedurally inadequate. *Plaintiff's Brief* at 16-18.

The credibility determination, guided by SSR 96–7p, describes a two-step process for evaluating symptoms. *See Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir.1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment ... that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Second, SSR 96–7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical

evidence," the ALJ must analyze the claims "based on a consideration of the entire case record."

C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) lists the factors to be considered in making the determination:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Plaintiff seems to argues that the ALJ was required to discuss all seven factors in performing the credibility determination. However, she cites no case law supporting this contention, and while the language of the regulation clearly states that all the factors must be considered, it does not require them to be articulated. *See Bowman v. Chater,* 132 F.3d 32, 1997 WL 764419, *4 (6th Cir. November 26, 1997)(ALJ not required to "undergo . . . an extensive analysis in every decision").

Substantively speaking, Plaintiff contends that the ALJ ignored her testimony that she experienced the medication side effects of drowsiness and required two-hour naps everyday. *Plaintiff's Brief at 17* (citing 50). However, Plaintiff did not state that as of March, 2004, she was required to nap two hours a day, rather, that she *currently* required daily nap time (Tr. 50). While Plaintiff stated that as of February, 2004, she experienced sleeplessness (Tr. 36). The treating notes from this period do not support the conclusion that she required daily naps.

A plethora of evidence showing that she experienced the need to nap or experienced

otherwise disabling symptoms after the DLI has no bearing on the lack of evidence supporting a disability finding before the expiration of benefits. For example, although Plaintiff testified at length regarding psychological problems directly preceding her July, 2005 hospitalization (Tr. 49), she did not allege medication side effects occurring before March 31, 2004 and indeed, the treating records from this period do not state that Plaintiff experienced side effects. Even assuming that Plaintiff's testimony that she required two hour naps every day pertained to the period before the DLI, the ALJ noted that the records from this period, while showing the presence of depression, a bipolar disorder, and anxiety, did not support the need to nap or support a disability finding (Tr. 22). Plaintiff's testimony that she experienced a "psychotic break" in February, 2004 is likewise unsupported by the treating notes from this period (Tr. 33). My own review of the records predating the expiration of benefits also fails to support the claim that she required two-hour naps every day because of medication side effects.

### C.  SSR 83-20

Plaintiff also argues that the ALJ erred by ignoring the Function Report of Plaintiff's former husband, Ronald Waligora. *Plaintiff's Brief* at 18-21. Citing *Newell v. CSS,* 347 F.3d 541, 547 (3d. Cir. 2003), she contends that "lay evidence relating back to the claimed period of disability[] can support a finding of past impairment.'" *Id.*

Plaintiff relies on the following portion of SSR 83-20 to support the argument that the findings of her former husband ought to have been according significant weight:

> If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation. Information may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of

the individual's condition. However, before contacting these people, the claimant's permission must be obtained. The impact of lay evidence on the decision of onset will be limited to the degree it is not contrary to the medical evidence of record. SSR 83-20, 1983 WL 31249, *3 (January 1, 1983).

This argument is without merit. First, SSR 83-20 is inapplicable to the present case. This Regulation pertains to instances in which the ALJ, having made a disability finding, must weigh evidence in determining the onset date. The introduction to the Regulation states that "[i]n addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability." *Id.* at *1. Here, the ALJ did not find the presence of disability, determining that Plaintiff was not disabled at any point before March 31, 2004. The non-disability finding mooted the question of an "onset" date. The Sixth Circuit's holding in *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) is directly on point with the present case:

> Since the onset date of claimant's alleged mental impairment is significant, [the plaintiff] argues that the ALJ erred in failing to follow the mandates of Social Security Ruling 83-20, which pertains to onset of disability. S.S.R. 83-20 (Cum.Ed.1983-1991). The Commissioner responds to this argument by asserting that SSR 83-20 is not applicable to this case, since this policy statement applies only when there has been a finding of disability and it is necessary to determine when the disability began. We agree. Since there was no finding that the claimant is disabled as a result of his mental impairment or any other impairments or combination thereof, no inquiry into onset date is required. The only necessary inquiry is whether the claimant was disabled prior to the expiration of his insured status, and we agree that the ALJ correctly determined he was not.

Second, the opinion of Plaintiff's former husband, even if entitled to additional weight, does not support the onset of disability before March 31, 2004. He stated only that Plaintiff cared for her hair less than before 2004 (Tr. 158) and was hospitalized for three psychotic episodes between 2004 and 2007 (Tr. 164). His observation that Plaintiff did not spend as much time caring for her hair beginning in 2004, by any measure, does not establish

disability or even greater limitations than those found in the RFC. His additional statement that Plaintiff was hospitalized three times between 2004 and 2007 is of course contradicted by Dr. Moriarty's summation and treating records showing that Plaintiff was not hospitalized until 2005.

### D. The Hypothetical Question

Last, Plaintiff contends that the hypothetical question did not contain all of her relevant limitations. *Plaintiff's Brief* at 21-23. She contends that as such, the VE's corresponding job testimony does not constitute substantial evidence. *Id.* She points out that the hypothetical question to the VE ought to have encompassed all of Dr. Moriarty's findings and Plaintiff's self-assessment of her daily activities. *Id.* (citing Tr. 55-56).

At the hearing, Plaintiff's counsel cited Dr. Moriarty's findings, posing the following set of limitations to the VE:

> Plaintiff would not be able to meet competitive standards in maintaining social functions, concentration, persistence or pace and carry out and remember simple instructions, perform simple tasks on a full time basis, routine repetitive tasks or sustain concentration to task and attention to task. Use [judgment] and relate appropriately to supervisors and co-workers (Tr. 55-56).

The VE responded that if the individual experienced the above limitations, no jobs would be available (Tr. 56).

Plaintiff is correct that a hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments. *Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir. 1987). However, as discussed above in section **A.,** the ALJ permissibly declined to adopt Dr. Moriarty's findings because little if any evidence supported the conclusion that Plaintiff was unable to complete simple tasks or "meet competitive standards" on or before March 31, 2004.

Having discounted the psychologist's assessments on this basis he was not required to include them into his Step Five analysis. *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include discredited findings in the hypothetical question). Moreover, the ALJ's choice of hypothetical limitations, restricting Plaintiff to only occasional interaction with the public and coworkers and "no tandem tasks," easily encompasses the limited treating notes from the relevant period (Tr. 54, 409-414).

In closing I note that while Plaintiff experienced some degree of limitation as a result of psychological problems during the relevant period, the conclusion that she did not experience disability prior to March 31, 2004 is supported by the record. Moreover, I find no error in the ALJ's discussion of the treating records. Based on a review of this record, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment [Doc. #13] be GRANTED and that Plaintiff's motion [Doc. #12] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/ R. Steven Whalen
                                                R. STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE

Date: January 30, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 30, 2013.

                                                s/Johnetta M. Curry-Williams
                                                Case Manager